UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDREW RUSSELL, #747638,

       Plaintiff,                                Hon. Robert J. Jonker

v.                                               Case No. 1:24-cv-599

DAREN FERDEN, et al.,

       Defendants.
_____/

**REPORT AND RECOMMENDATION**

This matter is before the Court on Defendants' Motion to Dismiss (ECF No. 10), Defendants' Motion to Dismiss (ECF No. 15), Defendant's Motion for Summary Judgment (ECF No. 30), and Defendants' Motion to Dismiss (ECF No. 37). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' Motion to Dismiss (ECF No. 10) be granted in part and denied in part, Defendants' Motion to Dismiss (ECF No. 15) be granted in part and denied in part, Defendant's Motion for Summary Judgment (ECF No. 30) be denied, Defendants' Motion to Dismiss (ECF No. 37) be granted, and that this action terminated.

**BACKGROUND**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC). Plaintiff initiated the present action concerning events that preceded his present incarceration. Specifically, Plaintiff has sued the following

-1-

individuals and entities: (1) Chad Fisk; (2) Jonathan Kraai; (3) Natascha Hirdes; (4) Daniel Hirdes; (5) Daren Ferden[1]; (6) Justin Copelin[2]; (7) Joshua Dock; (8) Anna Birkeland; (9) Scott Nibbelink; (10) Celesta Vanderveen; (11) Matthew Kennedy; (12) Daniel Helmer; (13) City of Grand Rapids; (14) Corey Mulka; and (15) Kent County.   In his complaint, Plaintiff alleges the following.

On September 11, 2023, Corey Mulka, Plaintiff's parole officer, visited Plaintiff's residence. Mulka performed a "mouth swab" on Plaintiff which, "showed positive." Plaintiff acknowledged consuming an Adderall "from someone" because his Strattera prescription "had run out." Having determined that Plaintiff had committed a parole violation, Mulka obtained a warrant for Plaintiff's arrest.

On September 18, 2023, Plaintiff was arrested by a group of United States Marshals, including Daren Ferden, who transported Plaintiff to the Kent County Correctional Facility (KCCF). After arriving at KCCF, Ferden and Unknown Copeland attempted to question Plaintiff who refused to answer any questions until he could speak with his parole officer. At this point, Chad Fisk informed Plaintiff that "things will go easier" if he agrees to answer their questions. Plaintiff again refused, after which he was assaulted by Ferden, Fisk, Kraai, Copelin, Natascha Hirdes, and Daniel Hirdes. Plaintiff later pleaded guilty to an unidentified offense.

---

[1] The United States of America was later substituted as defendant with respect to the tort claims asserted against Ferden. (ECF No. 41).

[2] Copelin was identified as Unknown Copeland in Plaintiff's complaint.

Plaintiff alleges that Defendants violated his federal constitutional rights in various, albeit largely unspecified, ways. Plaintiff also advances numerous state law claims. Plaintiff demands more than $14 million in damages. Defendants all move for relief for the reasons identified herein. Plaintiff has responded to Defendants' motions. The Court finds that oral argument is unnecessary. *See* W.D. Mich. LCivR 7.2(d).

## I.   Exhaustion – Defendant Mulka

Plaintiff alleges that Defendant Mulka violated his state and federal rights by improperly charging him with a parole violation. Defendant Mulka moves for summary judgment on the ground that Plaintiff failed to exhaust his administrative remedies.

Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action regarding prison conditions under 42 U.S.C. § 1983 must first exhaust his administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). This obligation only extends, however, to such administrative remedies as are available. *Ross v. Blake*, 578 U.S. 632, 642 (2016) (a prisoner "must exhaust available remedies, but need not exhaust unavailable ones").

Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing. *Ibid*.

With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion" defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

MDOC Policy Directive 03.02.130 articulates the applicable grievance procedures for prisoners in MDOC custody. Prior to submitting a grievance, a prisoner must attempt to resolve the issue with staff, unless prevented by circumstances beyond his control, or the issue falls within the jurisdiction of Internal Affairs. MDOC Policy Directive 03.02.130 ¶ Q (Mar. 18, 2019). The prisoner must attempt to resolve the matter within two days of becoming aware that there exists a grievable issue. (*Id.*).

If this attempt is unsuccessful (or such is inapplicable), the prisoner may submit a Step I grievance, but such must be submitted within five business days after attempting to resolve the matter with staff. MDOC Policy Directive 03.02.130 ¶ W (Mar. 18, 2019). The issues asserted in a grievance "should be stated briefly but concisely" and the "[d]ates, times, places, and names of all those involved in the issue

being grieved are to be included." MDOC Policy Directive 03.02.130 ¶ S (Mar. 18, 2019).

If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within ten business days of the response, or if no response was received, within ten business days after the response was due. MDOC Policy Directive 03.02.130 ¶ DD (Mar. 18, 2019). If the prisoner is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal the matter to Step III. MDOC Policy Directive 03.02.130 ¶ HH (Mar. 18, 2019).

In support of his motion, Defendant Mulka presents unrefuted evidence that Plaintiff failed to pursue through all three steps any grievance regarding the events giving rise to this action. What Defendant failed to do, however, was engage in any analysis or discussion concerning whether Plaintiff's claims against him are even subject to the PLRA's exhaustion requirement.

As noted above, the PLRA requires exhaustion with respect to actions complaining about prison conditions. *See* 42 U.S.C. § 1997e(a). The relevant MDOC Policy Directive reflects this, stating that prisoners and parolees are required to submit grievances for "alleged violations of policy or procedure or unsatisfactory conditions of confinement." MDOC Policy Directive 03.02.130 ¶ F (Mar. 18, 2019). However, if a claim asserted by a prisoner or parolee challenges "the fact or duration of confinement itself," the PLRA's exhaustion requirement simply does not apply.

*See, e.g., Soldan v. Robinson*, 2020 WL 5997309 at *4 (E.D. Mich., July 9, 2020) (parolee was not required to exhaust claims related to his allegedly improper parole revocation). Plaintiff's claims against Defendant Mulka center on the allegation that Mulka's actions resulted in his unlawful arrest and improper revocation of his parole.

Defendant Mulka has failed to demonstrate that Plaintiff's claims against him are subject to the PLRA's exhaustion requirement. Having failed to establish that, the undersigned finds that Defendant has failed to satisfy his burden on the question of exhaustion. *See, e.g., Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (where the moving party has the burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party"); *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999) (summary judgment in favor of the party with the burden of proof "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact"). Accordingly, the undersigned recommends that Defendant Mulka's motion for summary judgment be denied.

## II.    Failure to State a Claim – Defendant Mulka

Plaintiff has been permitted to proceed as a pauper in this matter. (ECF No. 5). Pursuant to federal law, "[n]otwithstanding any filing fee, or portion thereof, that may have been paid" by a litigant pauper, "the court *shall* dismiss the case *at any time* if the

court determines that. . .the action. . .fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii) (emphasis added).

A.  Legal Standard

A claim must be dismissed for failure to state a claim on which relief may be granted unless the "[f]actual allegations [are] enough to raise a right for relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). As the Supreme Court has held, to avoid dismissal, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." If the complaint simply pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* As the Court further observed:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . .Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . .Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common

> sense. But where the well pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]" – "that the pleader is entitled to relief."

*Id.* at 678-79 (internal citations omitted).

The burden to obtain relief under Rule 12(b)(6), however, rests with the defendant. *See, e.g., DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). The Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." A motion to dismiss "should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Ibid.*

When resolving a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case, and exhibits attached to the defendant's motion to dismiss provided such are referenced in the complaint and central to the claims therein. *See Bassett v. National Collegiate Athletic Assoc.*, 528 F.3d 426, 430 (6th Cir. 2008); *see also*, *Continental Identification Products, Inc. v. EnterMarket, Corp.*, 2008 WL 51610 at *1, n.1 (W.D. Mich., Jan. 2, 2008) ("an exhibit to a pleading is considered part of the pleading" and "the Court may properly consider the exhibits. . .in determining whether the complaint fail[s] to state a claim upon which relief may be granted without converting the motion to a Rule 56 motion"); *Stringfield v. Graham*, 212 Fed. Appx. 530, 535 (6th Cir. 2007) (documents "attached to and cited by" the complaint are "considered parts thereof under Federal Rule of Civil Procedure 10(c)").

B.   Analysis

Plaintiff alleges that Defendant Mulka violated his federal law rights in two respects. Plaintiff alleges that Mulka exhibited "deliberate indifference," and that he violated his right to due process. Plaintiff utterly fails to articulate the basis or nature of these claims, but instead merely asserts the legal conclusion that his rights were violated. (ECF No. 1, PageID.12). Regardless, Plaintiff has alleged no facts that state a claim.

Plaintiff concedes in his complaint that when he met with Defendant Mulka, on September 11, 2023, he tested positive for drugs. Plaintiff further concedes that he tested positive because he had taken Adderall, a controlled substance,[3] that had been prescribed to someone else. In response, Defendant Mulka allegedly secured a warrant for Plaintiff's arrest for violating the terms of his parole. These facts hardly state a claim for deliberate indifference as Plaintiff has failed to allege that Mulka "perceived facts from which to infer substantial risk to [Plaintiff], that Mulka did in fact draw the inference, and that Mulka then disregarded that risk." *Harden v. Blair*, 2022 WL 2716299 at *4 (E.D. Mich., May 18, 2022).

Likewise, these facts do not state a claim for violation of due process as Plaintiff concedes the facts that support his subsequent arrest and does not allege that Defendant Mulka secured his arrest through subterfuge or unlawful act. Moreover, Plaintiff has

---

[3] Adderall is categorized by the federal government as a Schedule II controlled substance.   *See* Drug Scheduling, available at https://www.dea.gov/drug-information/drug-scheduling (last visited Nov. 15, 2024).

-9-

not alleged that he was denied a hearing on the question of his alleged parole violation or, if he was denied such a hearing, that such was the result of any action undertaken by Defendant Mulka. *See, e.g., Soldan v. Washington*, 2019 WL 5257933 at *3 (W.D. Mich., Oct. 17, 2019) (observing that parolees enjoy "minimal due process protections").

Accordingly, the undersigned recommends that Plaintiff's federal claims against Defendant Mulka be dismissed for failure to state a claim. As for Plaintiff's numerous state law claims against Defendant Mulka, such are addressed below.

## III. Retaliation

Plaintiff alleges that Defendants Fisk and Kraai violated his right to be free from unlawful retaliation. To prevail on his retaliation claim, Plaintiff must satisfy three elements: (1) he was engaged in constitutionally protected conduct; (2) Defendant took adverse action against him which would deter a person of ordinary firmness from continuing to engage in protected conduct; and (3) the adverse action was motivated by Plaintiff's protected conduct. *See Holzemer v. City of Memphis*, 621 F.3d 512, 520 (6th Cir. 2010).

Plaintiff has failed to allege facts sufficient to state a claim for retaliation. Plaintiff has failed to allege what protected conduct he engaged in or what adverse action Defendants allegedly engaged in. Plaintiff has likewise failed to allege facts from which it can reasonably be inferred that any adverse action undertaken by Defendants was in any way motivated by Plaintiff's protected conduct. Accordingly,

the undersigned recommends that Plaintiff's retaliation claims against Defendants Fisk and Kraai be dismissed for failure to state a claim.

## IV.     Excessive Use of Force

Plaintiff alleges that Defendants Ferden, Fisk, Kraai, Copelin, Natascha Hirdes, and Daniel Hirdes subjected him to excessive force in violation of his constitutional rights. As Defendants correctly observe, Plaintiff's complaint is not a model of clarity. But, in describing the events that occurred at the KCCF following his arrest on September 18, 2023, Plaintiff plainly alleges that Defendants Ferden, Fisk, Kraai, Copelin, Natascha Hirdes, and Daniel Hirdes employed excessive force and assaulted him. Specifically, Plaintiff alleges that Ferden, Copelin, Natascha Hirdes, and Daniel Hirdes "help[ed] Fisk and Kraai to twist, pull, punch and jerk and thrash [his] body around." (ECF No. 1, PageID.9).

While Plaintiff invokes the Eighth Amendment in his complaint, his excessive force claims, because he was a pre-trial detainee, arise under the Fourteenth Amendment. *See, e.g., Greene v. Crawford County, Michigan*, 22 F.4th 593, 605 (6th Cir. 2022). While Eighth Amendment and Fourteenth Amendment claims were previously analyzed "under the same rubric," *Brawner v. Scott County, Tennessee*, 14 F.4th 585, 591 (6th Cir. 2021), the analysis of excessive force claims now diverges depending on the plaintiff's status. *See Kingsley v. Hendrickson*, 576 U.S. 389 (2015).

-11-

Specifically, for Plaintiff to prevail on his excessive force claims, he must demonstrate "that the force purposely or knowingly used against [him] was objectively unreasonable." *Howell v. NaphCare, Inc.*, 67 F.4th 302, 320 (6th Cir. 2023). The reasonableness of any force used "turns on the facts and circumstances of the particular case, and [the] court must make this determination from the perspective of a reasonable [official] on the scene, including what the [official] knew at the time, not with the 20/20 vision of hindsight." Factors relevant to this inquiry include: (1) the relationship between the need for the use of force and the amount of force used; (2) the extent of any injury suffered by the plaintiff; (3) any effort made by the officer to temper or limit the amount of force used; (4) the severity of the security problem necessitating the use of force; (5) the threat reasonably perceived by the officer; and (6) whether the plaintiff was actively resisting. *Ibid.*

Video evidence of the encounter, (ECF No. 26), however, reveals that Defendants responded reasonably to Plaintiff's refusal to cooperate and his active resistance to lawful commands. The video reveals the following.[4]

---

[4] The Court may rely on this video evidence given Plaintiff's numerus references to such in his complaint. *See, e.g., Bassett v. National Collegiate Athletic Assoc.*, 528 F.3d 426, 430 (6th Cir. 2008) (when assessing a Rule 12(b)(6) motion, the Court "may consider. . .exhibits attached to the defendant's motion to dismiss provided such are referenced in the complaint and central to the claims therein"). Moreover, reliance on video evidence in the context of a Rule 12(b)(6) motion is appropriate where a defendant asserts a right to qualified immunity which is the case here. *See, e.g., Davis v. Chorak*, 624 F.Supp.3d 870, 877 (W.D. Mich. 2022).

Plaintiff was escorted into the KCCF, with his hands cuffed in front of his body. Plaintiff entered what appears to be a large reception room. Plaintiff was escorted to a table in the room's center where he stood with his back against a table. One officer is standing near Plaintiff and two other officers are standing approximately ten to twelve feet away. The officer standing nearest to Plaintiff then informed Plaintiff that some other officers are "going to have some questions for you." Plaintiff became upset that he was not allowed to first contact his parole officer. One of the two officers standing furthest from Plaintiff informed Plaintiff that he will be able to call his parole officer "after" answering the other officers' questions.

At this point, one of the officers standing furthest from Plaintiff began walking toward Plaintiff. Two other officers then enter the room walking several feet behind the first. These three officers approached Plaintiff normally and none are brandishing or displaying weapons. These officers intended to escort Plaintiff to a different area of the facility so that he could speak with officers about the circumstances resulting in his arrest for an alleged parole violation.[5] Despite enjoying no right to refuse to answer questions regarding his status as a parolee, Plaintiff immediately resisted.

---

[5] The Court notes that a parolee enjoys no constitutional right to refuse to answer questions regarding "matters that affect his. . .status" as a parolee. *Minnesota v. Murphy*, 465 U.S. 420, 434-35 (1984); *United States v. Smalcer*, 464 Fed. Appx. 469, 473 (6th Cir., Feb. 12, 2012) (same).

Plaintiff very quickly began moving away from the officers. When another officer, the officer who had been standing nearest Plaintiff, attempted to regain control of Plaintiff, Plaintiff physically resisted and assumed an aggressive stance toward the officers. Plaintiff then continued moving away from the officers while yelling, "get up off me, man." In response, one officer instructed Plaintiff to "chill." Plaintiff responded to this instruction by continuing to resist and ignore instructions.

Plaintiff eventually backed himself into a corner at which point one of the officers again attempted to regain control of Plaintiff. Plaintiff refused to comply and instead responded by attempting to swing his arms in a violent manner. Two officers eventually gained control of Plaintiff, with one officer each holding one of Plaintiff's arms. The officers began to slowly walk Plaintiff to a door leading to a different area of the facility. After only a few steps, however, Plaintiff began to violently resist. At this point, the two officers holding Plaintiff's arms calmly took Plaintiff to the ground. While on the ground, Plaintiff continued arguing with the officers and resisting instructions. The officers eventually gained Plaintiff's compliance and escorted him to a room so he could "lie down."

In the undersigned's estimation, no reasonable juror viewing this evidence, even in a light most favorable to Plaintiff, could conclude that the officers' actions were objectively unreasonable under the circumstances. Plaintiff was actively resisting and the officers employed minimal force to gain Plaintiff's compliance in an attempt to prevent injury to themselves or Plaintiff. There is no evidence that

Plaintiff suffered any injury in this encounter which further supports the conclusion that the officers employed only that amount of force necessary to gain Plaintiff's compliance and prevent injury to Plaintiff or others. Accordingly, the undersigned recommends that Plaintiff's excessive force claims against Defendants Ferden, Fisk, Kraai, Copelin, Natascha Hirdes, and Daniel Hirdes be dismissed.

## V.   Brady Violation

Plaintiff alleges that Defendant Helmer, an assistant prosecutor for Defendant Kent County, violated his rights by failing to provide him with certain evidence in violation of the rule articulated by the Supreme Court in *Brady v. Maryland*, 373 U.S. 83 (1963). To establish a *Brady* violation, Plaintiff must establish the following: (1) the evidence in question was exculpatory; (2) the evidence was suppressed by the State; and (3) plaintiff suffered prejudice. *See, e.g., Clark v. Warden*, 934 F.3d 483, 492 (6th Cir. 2019).

Plaintiff alleges that certain video evidence "proves [his] innocence." But it is important to note that Plaintiff does not allege that Helmer failed to provide the alleged *Brady* material to his attorney. Rather, Plaintiff alleges that his rights were violated because "neither [his attorney] nor Daniel J. Helmer have allowed me a copy [of the video evidence] nor [allowed me] to watch the full video." Plaintiff does not allege that Helmer failed to provide the material in question to his attorney. Rather, Plaintiff argues that his rights were violated because Helmer failed to provide *him* with a copy of the subject material.

-15-

While the alleged refusal by Plaintiff's attorney to allow Plaintiff to view or possess the evidence in question may implicate some other right, it does not sufficiently allege a violation of the *Brady* rule. When a criminal defendant is represented by counsel, a prosecutor satisfies his obligations under *Brady* by providing the material in question to the defendant's counsel. *See, e.g., United States v. Bagley*, 473 U.S. 667, 675 (1985) (recognizing that *Brady* requires disclosure of certain material to "defense counsel"); *United States v. Ross*, 703 F.3d 856, 881 (6th Cir. 2012) (*Brady* not violated where subject material provided to defense counsel). Accordingly, the undersigned recommends that Plaintiff's *Brady* violation claim against Defendant Helmer be dismissed for failure to state a claim.

**VI.      Defendants Kent County and City of Grand Rapids**

Invoking 42 U.S.C. § 1983, Plaintiff has named Kent County and City of Grand Rapids as defendants in this matter. Plaintiff has failed, however, to advance any factual allegations against either Defendant or identify what claims he is asserting against them.

Section 1983 is the means by which "persons" who violate the constitutional rights of others can be held accountable. *See* 42 U.S.C. § 1983. While "municipalities and other local governmental bodies" are considered "persons" under § 1983, neither Kent County nor the City of Grand Rapids can be held liable under § 1983 solely because it employs a tortfeasor. *Board of County Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 403 (1997). To impose liability on

these defendants, Plaintiff must establish that he suffered a constitutional injury as a result of "official municipal policy." *Connick v. Thompson*, 563 U.S. 51, 60 (2011). Official municipal policy includes "the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Id.* at 61.

Plaintiff has alleged no facts which, even if accepted as true, satisfy this standard. The undersigned recommends, therefore, that Plaintiff's claims against Kent County and the City of Grand Rapids be dismissed for failure to state a claim.

**VII.  Tort Claims Against the United States**

As previously noted, the United States of America has been substituted as defendant with respect to the tort claims asserted against Defendant Ferden. (ECF No. 41). As the United States correctly argues, Plaintiff cannot pursue these claims, however, because he has not exhausted his administrative remedies. *See, e.g., Grant v. United States Environmental Protection Agency*, 2023 WL 5016608 at *11 (W.D. Mich., June 1, 2023) (collecting cases which stand for the proposition that the Federal Tort Claims Act's exhaustion requirement is jurisdictional and failure to exhaust administrative remedies as to such claims deprives the court of jurisdiction). The undersigned recommends, therefore, that Plaintiff's tort claims against the United States be dismissed.

**VIII.  State Law Claims**

Finally, Plaintiff has advanced a plethora of state law claims.  Pursuant to 28 U.S.C. § 1367(c)(3), the district court may decline to exercise supplemental jurisdiction over a state law claim if it "has dismissed all claims over which it has original jurisdiction."  Indeed, "if the federal claims are dismissed before trial. . .the state claims should be dismissed as well."  *Taylor v. First of America Bank - Wayne*, 973 F.2d 1284, 1287 (6th Cir. 1992) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)); *see also*, *Bah v. Attorney General of the State of Tennessee*, 610 Fed. Appx. 547, 555 (6th Cir., May 8, 2015) (same).  As discussed herein, the undersigned recommends that the federal law claims asserted in Plaintiff's complaint be dismissed.  There also exist other compelling reasons to decline to exercise supplemental jurisdiction over Plaintiff's state law claims.  As the Honorable Robert J. Jonker has observed:

> [F]actual overlap is insufficient to retain jurisdiction over [State law] claims.  The Court routinely declines supplemental jurisdiction over State law claims in federal civil rights cases, and it will do so here as well.  In addition to diverting time and attention from the federal civil rights at stake, Plaintiff's state law claims also put the federal Court in the position of evaluating state claims against individuals associated with state and local governmental operations.  Those matters are best addressed by state – not federal – courts.

*Mulcahey v. Chocolay Township*, 2024 WL 4604055 at * 2 (W.D. Mich., Oct. 29, 2024).

Accordingly, the undersigned recommends that the Court decline to exercise supplemental jurisdiction over Plaintiff's state law claims and that all such claims, asserted against, Defendants Fisk, Kraai, Natascha Hirdes, Daniel Hirdes, Copelin,

Dock, Birkeland, Nibbelink, Vanderveen, Kennedy, Helmer, and Mulka be dismissed without prejudice so that they can be pursued in a more appropriate forum.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that Defendants' Motion to Dismiss (ECF No. 10) be granted in part and denied in part, Defendants' Motion to Dismiss (ECF No. 15) be granted in part and denied in part, Defendant's Motion for Summary Judgment (ECF No. 30) be denied; Defendants' Motion to Dismiss (ECF No. 37) be granted, and that this action be terminated.

Specifically, the undersigned recommends that: (1) Defendant Mulka's motion for summary judgment be denied but that Plaintiff's federal law claims against Mulka nevertheless be dismissed for failure to state a claim; (2) Plaintiff's retaliation claims against Defendants Fisk and Kraai be dismissed for failure to state a claim; (3) Plaintiff's excessive force claims against Defendants Ferden, Fisk, Kraai, Copelin, Natascha Hirdes, and Daniel Hirdes be dismissed for failure to state a claim; (4) Plaintiff's Brady violation claim against Defendant Helmer be dismissed for failure to state a claim; (5) Plaintiff's claims against Defendants City of Grand Rapids and Kent County be dismissed for failure to state a claim; (6) Plaintiff's tort claims against the United States be dismissed for failure to exhaust administrative remedies; (7) Plaintiff's state law claims against Defendants Fisk, Kraai, Natascha Hirdes, Daniel Hirdes, Copelin, Dock, Birkeland, Nibbelink, Vanderveen, Kennedy, Helmer, and Mulka be dismissed without prejudice; and (8) this action be terminated.

For the same reasons the undersigned makes this recommendation, the undersigned finds that an appeal of such would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the undersigned further recommends that an appeal of this matter by Plaintiff would not be in good faith.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: November 22, 2024

/s/ Phillip J. Green
PHILLIP J. GREEN
United States Magistrate Judge